**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **Kayla Ennett** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | |
| **Main Line Health** | : | |
| **and** | : | **JURY TRIAL DEMANDED** |
| **Dr. Lauren E. Baker** | : | |
| **Defendants** | | |

## COMPLAINT

### I.    INTRODUCTION

1.      Plaintiff, Kayla Ennett (hereinafter "Ms. Ennett"), is suing her former employer, Defendant, Main Line Health (hereinafter "MLH"), for retaliation and racial discrimination under 42 U.S.C. § 1981 (hereinafter "Section 1981), Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") and the Pennsylvania Human Relations Act (herein after "the PHRA").

2.      MLH terminated Ms. Ennett after more than four years of employment because of her race, after she was accused of theft of credit card information by a white physician. Ms. Ennett provide that she had not stolen the information or used the credit card information for any purpose other than what she had been told to use it for by the physician, ordering one meal for the office staff in July of 2021. Ms. Ennett seeks compensatory and punitive damages (compensatory damages sought under Section 1981, Title VII and the PHRA) (punitive damages sought under Section 1981 and Title VII), back pay, reinstatement or front pay, loss of earnings and benefits, interest, costs, negative tax consequence damages, injunctive and declaratory relief, and attorneys' fees from MLH.

3.      Dr. Baker falsely accused Ms. Ennett of stealing her credit card information and defamed her and discriminated against her due to her race, for which she can be individually liable under Section 1981 and the PHRA. Ms. Ennett seeks compensatory damages under Section 1981,

10

the PHRA and her defamation claim, punitive damages under Section 1981 claim, back pay, reinstatement or front pay, loss of earnings and benefits, interest, costs, negative tax consequence damages, injunctive and declaratory relief, and attorneys' fees from Dr. Baker as well as compensatory damages, presumed damages due to defamation *per se*, punitive damages relating to her defamation claim.

## II.     JURISDICTION AND VENUE

4.      This Court has jurisdiction over Ms. Ennett's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4); 42 U.S.C. § 1983 and 42 U.S.C. § 2000e-5(f). This Court has jurisdiction over Ms. Ennett's PHRA and Defamation claims pursuant to 28 U.S.C. § 1367(a).

5.      Ms. Ennett has exhausted all administrative remedies available to her.

6.      Ms. Ennett filed a complaint with the Equal Employment Opportunity Commission (EEOC) on February 19, 2026, and dual filed her complaint with the Pennsylvania Human Relations Commission. February 24, 2026, the EEOC issued a notice of right to sue, and this Complaint is filed within 90 days of Ms. Ennett's receipt of the EEOC notice of right to sue.

7.      The unlawful acts and practices of MLH were committed against Plaintiff while she was employed by MLH in the Eastern District of Pennsylvania.

## III.    PARTIES

8.      Ms. Ennett is a Black woman who resides in the Eastern District of Pennsylvania.

9.      Defendant Baker is an adult individual who resides at 17 Pickwick Ln Malvern, PA 19355.

10.     Ms. Ennett worked for MLH from 2021 until September 8, 2025.

10

11. MLH is based in the Eastern District of Pennsylvania and employs more than 10,000 employees.

12. Defendant MLH's corporate headquarters is located at 240 Radnor Chester Rd., Radnor, PA 19087.

## IV. FACTS

13. Ms. Ennett was employed by respondent Main Line Health for approximately four years as a medical assistant in a primary care office in King of Prussia.

14. On or about July 30, 2021, Dr. Lauren E. Baker, a white woman, gave Ms. Ennett her credit card information so Ms. Ennett could order Chick-Fil-A for the office, which Ms. Ennett did using DoorDash.

15. On or about August 29, 2025, there was an issue with Ms. Ennett's credit card on DoorDash. As a result the DoorDash system automatically tried to bill any other cards she had previously used. The DoorDash automated system tried to bill Dr. Baker's credit card for a little under $10, but card had expired so it was declined.

16. Shortly thereafter, Dr. Baker began making the accusation that Ms. Ennett had stolen her credit card information without speaking with Ms. Ennett to find out what happened.

17. On or about September 1, 2025, Dr. Baker told Vincent, a medical assistant in the office where Ms. Ennett worked, that Ms. Ennett had stolen her credit card information and tried to use it for DoorDash.

18. Dr. Baker's statement to Vincent that Ms. Ennett had stolen her credit card information was not true.

10

19. Dr. Baker's statement to Vincent that Ms. Ennett had stolen her credit card information was either knowingly false or made with reckless and/or negligent disregard for the truth.

20. Dr. Baker's statement to Vincent that Ms. Ennett had stolen her credit card involved an accusation of criminal behavior and business misconduct.

21. Dr. Baker's statement to Vincent that Ms. Ennett had stolen her credit card resulted in the accusation being spread among other co-workers in Ms. Ennett's workplace.

22. Vincent was not a management employee and had no supervisory role regarding Ms. Ennett.

23. Dr. Baker's statement to Vincent that Ms. Ennett had stolen her credit card was not made for any legitimate business purpose.

24. Dr. Baker's statement to Vincent that Ms. Ennett had stolen her credit card was not protected by any applicable coverage.

25. Upon information and belief, Dr. Baker made defamatory statements to others by falsely claiming that Ms. Ennett had stolen her credit card information and these statements were not made for any legitimate business purpose and were not protected by any applicable privilege.

26. The facts regarding Dr. Baker's additional defamatory statements are known to her and under her control.

27. On or about September 1, 2025, Dr. Baker made a report to the Upper Merion Police accusing Ms. Ennett of credit card theft and made the same accusation to Main Line Health Human Resources.

28. On or about September 2, 2025, Ms. Ennett was contacted by Main Line Health Human Resources and suspended.

29.    MLH Human Resources told Ms. Ennett that she had stolen a doctor's credit card. Ms. Ennett told them she did not. They asked if she had ever made a group order on DoorDash for the office and Ms. Ennett told them she did.

30.    MLH Human Resources did not ask for any other information or give Ms. Ennett any other chance to explain Ms. Ennett's side of the situation.

31.    The Upper Merion police department investigated the allegations and issued a report stating "Case Closed / Not an Offense."

32.    On September 8, 2025, Ms. Ennett was terminated for "theft of credit card information." See Exhibit A.

33.    On September 16, 2025, Ms. Ennett sent a dispute of her termination to Nicole Radolovic of Main Line Health HR (a white woman) and several others in management. Ms. Ennett explained what happened and how Ms. Ennett had not been given the chance to explain it to anyone before being fired.  Exhibit B.

34.    On September 22, 2025, Ms. Ennett sent another response, including documentation to explain what happened and establish that Ms. Ennett had not done anything improper with Dr. Baker's credit card.  Exhibit C.

35.    Ms. Ennett appealed Ms. Ennett's termination and on or about September 24, 2025, Ms. Ennett spoke with Jeanie Kim Carpenter, an Asian American woman, the Vice President for Ambulatory Operations and explained what happened.

36.    On October 8, Ms. Ennett wrote to HR again explaining what had happened with messages from DoorDash and asking them to confirm that they received the police report exonerating Ms. Ennett. Exhibit D.

37.    The same day, Ms. Kim Carpenter sent Ms. Ennett a letter dated October 8, 2025, upholding the termination. Exhibit E.

38.    Dr. Baker accused Ms. Ennett of stealing her credit card information because of her race.

39.    MLH's terminated Ms. Ennett's employment because of her race.

40.    MLH improperly failed to consider Ms. Ennett's appeal of her terminated because of her race.

41.    The MLH employees who made the decision to terminate Ms. Ennett's employment and deny her appeal were acting in the course and scope of their employment for MLH.

42.    Ms. Ennett has suffered, is now suffering and will continue to suffer emotional distress, embarrassment, humiliation, inconvenience, mental anguish, professional and reputational damage, and other losses as a result of the Defendants' illegal conduct.

43.    MLH engaged in intentional discrimination against Ms. Ennett with malice or reckless indifference to her rights under Section 1981 and Title VII.

44.    Dr. Baker engaged in intentional discrimination against Ms. Ennett with malice or reckless indifference to her rights under Section 1981.

V.    CLAIMS

**COUNT I – RACIAL DISCRIMINATION**
**Plaintiff vs. Defendant Main Line Health**
**Title VII Section 1981, and the PHRA**

45.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

46.    The acts, failures to act, practices and policies of MLH set forth above constitute racial discrimination in violation of Title VII, Section 1981, and the PHRA.

47.     As a direct and proximate result of MLH's illegal racial discrimination, Ms. Ennett has suffered harms and losses in the form of emotional distress, loss of earnings, anxiety, stress, humiliation, embarrassment, back pay and benefits, and front pay and benefits.

WHEREFORE, Ms. Ennett respectfully demands judgment in her favor and against Defendant Main Line Health for compensatory damages (under Title VII, Section 1981 and the PHRA), back pay, reinstatement or front pay, lost benefits, negative tax consequence damages, punitive damages (under Title VII and Section 1981), attorneys' fees plus costs, declaratory relief that the conduct engaged in by MLH violated Ms. Ennett's civil rights, equitable/injunctive relief directing MLH to cease any and all unlawful racial discrimination against employees and such other relief as the Court shall deem proper.

## COUNT II – RACIAL DISCRIMINATION
### Plaintiff vs. Defendant Lauren E. Baker
### Section 1981 and the PHRA

48.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

49.     The actions of Defendant Baker set forth above constitute racial discrimination in violation of Section 1981, and the PHRA.

50.     As a direct and proximate result of Defendant Baker's illegal racial discrimination, Ms. Ennett has suffered harms and losses in the form of emotional distress, loss of earnings, anxiety, stress, humiliation, embarrassment, back pay and benefits, and front pay and benefits.

WHEREFORE, Ms. Ennett respectfully demands judgment in her favor and against Defendant Baker for compensatory damages (under Section 1981 and the PHRA), back pay, reinstatement or front pay, lost benefits, negative tax consequence damages, punitive damages (under Section 1981), attorneys' fees plus costs, declaratory relief that the conduct engaged in by

Dr. Baker violated Ms. Ennett's civil rights, equitable/injunctive relief directing Dr. Baker to cease any and all unlawful racial discrimination against employees and such other relief as the Court shall deem proper.

## COUNT III – DEFAMATION
### Plaintiff vs. Defendants Lauren E. Baker

51.  The preceding paragraphs are incorporated by reference as if fully set forth herein.

52.  Ms. Ennett is and was at all times relevant hereto a private individual as defined by applicable Pennsylvania defamation law.

53.  As set forth in detail previously in the complaint on or about September 1, 2025, Dr. Baker defamed Ms. Ennett by telling Vincent, a medical assistant in the office where Ms. Ennett worked, that Ms. Ennett had stolen her credit card information and tried to use it for DoorDash.

54.  Upon information and belief, Dr. Baker made defamatory statements to others by falsely claiming that Ms. Ennett had stolen her credit card information and these statements were not made for any legitimate business purpose and were not protected by any applicable privilege.

55.  The facts regarding Dr. Baker's additional defamatory statements are known to her and under her control.

56.  Defendant Baker's defamatory statements were knowingly false and/or made with reckless disregard for the truth.

57.  Pleading in the alternative, Ms. Ennett alleges that Defendant Baker's defamatory statements may have been made negligently without exercising reasonable care in establishing their accuracy.

58.    Because the defamatory statements Dr. Baker made about Ms. Ennett involved an accusation of criminal conduct and business misconduct, they are defamation *per se.*

59.    As a result of Defendant Baker's defamation, Ms. Ennett suffered the loss of her job, emotional distress, reputational harm, impediments to her future employment, embarrassment and humiliation.

WHEREFORE, Ms. Ennett respectfully demands judgment in her favor and against Defendant Baker for compensatory damages, presumed damages due to defamation *per se*, punitive damages to punish Defendant's malicious and/or reckless misconduct.

Plaintiff hereby demands a jury to try all claims triable by jury.

SILVER & SILVER

By: *Joseph F. Schwartz, Esq.*
Joseph F. Schwartz, Esquire
Attorney for Plaintiff Kayla Ennett

Date: May 20, 2026